# No. 25-11356

IN THE

## United States Court of Appeals for the Fifth Circuit

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MARERLLIS NIX,

Defendant-Appellant

Appeal from the United States District Court,
Northern District of Texas, Fort Worth Division
Criminal Case No. 4:25-CR-116-O
Chief Judge Reed C. O'Connor, Presiding

**INITIAL BRIEF FOR DEFENDANT-APPELLANT**

**(ORAL ARGUMENT REQUESTED)**

JERRY V. BEARD, ESQ.
8901 Tehama Ridge Pkwy
Ste. 127, Box 109
Fort Worth, Texas 76177
(806) 239-6669
jerryvbeard@gmail.com

CADE SCOTT PALMER
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX 75201
(214) 855-8000
cade.palmer@nortonrosefulbright.com

*Counsel for Marerllis Nix*

May 21, 2026

## CERTIFICATE OF INTERESTED PERSONS

I certify that these people may have an interest in this case. I do so in order that the Court may evaluate possible disqualification or recusal.

| | |
|---|---|
| **District Judge:** | Honorable Reed C. O'Connor, C.J., |
| **United States Magistrates:** | The Honorable Jeffrey L. Cureton<br>The Honorable Hal R. Ray, Jr. |
| **Appellant:** | Mr. Marerllis Nix |
| **CJA Defense Counsel:** | Mr. G. Shane Lewis (dist. court)<br>Mr. Jerry V. Beard (appeal) |
| **Appointed *Pro Bono* Defense Counsel:** | Mr. Cade Palmer (dist. court, appeal) |
| **United States Attorney:** | Mr. Ryan R. Raybould |
| **Assistant U.S. Attorneys:** | Ms. Gail A. Hayworth (appeal)<br>Ms. Aisha Saleem (dist. court)<br>Ms. Allyson Monte (dist. court) |

*/s/ Jerry V. Beard*
**JERRY V. BEARD, Esq.**
Attorney of record for Appellant

## STATEMENT REGARDING ORAL ARGUMENT

Counsel suggests the Court will benefit from oral argument for at least two reasons. First, this appeal arises from a jury trial, is fact-intensive, and raises fact-dependent issues. Those factors alone would support argument.

But a second reason proves even stronger. Adjudication of this appeal will require the Court: (1) to expound upon and clarify the requirements demanded of a trial court when the Government seeks to introduce “other acts” evidence pursuant to Federal Rule of Evidence 413; and (2) to instruct bench and bar concerning the proper jury instructions to be given when this evidentiary rule is triggered. As best as Counsel can discern, because this Court has no pattern jury charge for Rule 413, within this circuit at least the issue may be *res nova*.

Additionally, Counsel would request argument to allow co-counsel, *pro bono* counsel appointed below and then later by this Court, to appear before the Court and to argue the case.

# TABLE OF CONTENTS

Certificate of Interested Persons ........................................................................ ii

Statement Regarding Oral Argument.................................................................... iii

Table of Authorities ................................................................................................ v

Jurisdictional Statement.......................................................................................... 1

Statement of the Issues Presented .......................................................................... 2

Statement of the Case ............................................................................................. 3

I. Procedural background. ...................................................................................... 3

II. Factual background............................................................................................. 3

Summary of the Argument...................................................................................... 9

Argument .............................................................................................................. 11

I. The district court reversibly erred when, after admitting D.P.'s testimony without conducting a Rule 413 threshold criminal-predicate inquiry, it then failed to instruct the jury properly concerning the jury's exclusive role in determining whether Rule 413 other-acts occurrences were criminal offenses. ........................................................................ 11

II. The district court abused its discretion in admitting D.P.'s testimony under Federal Rules of Evidence 404(b) and 403....................................... 28

III. Count One of the superseding indictment is unconstitutionally duplicitous. ........................................................................................... 33

IV. The district court erred in calculating Mr. Nix's Guidelines range by applying an unsupported obstruction enhancement and by refusing to group the two counts under U.S.S.G. § 3D1.2(b).................................. 41

Conclusion ............................................................................................................ 55

Certificate of Service ............................................................................................ 56

Certificate of Compliance...................................................................................... 57

# TABLE OF AUTHORITIES

**Supreme Court Decisions**

*Ball v. United States*, 470 U.S. 856 (1985) .......... 40

*Brookhart v. Janis*, 384 U.S. 1 (1966) .......... 45

*Clyatt v. United States*, 197 U.S. 207 (1905) .......... 41

*Huddleston v. United States*, 485 U.S. 681 (1988) .......... 16

*Ohler v. United States*, 529 U.S. 753 (2000) .......... 39

*Ramos v. Louisiana*, 590 U.S. 83 (2020) .......... 34, 36

*Rock v. Arkansas*, 483 U.S. 44 (1987) .......... 45

*Rosales-Mireles v. United States*, 585 U.S. 129 (2018) .......... 28, 41

*Rutledge v. United States*, 517 U.S. 292 (1996) .......... 40

*United States v. Dunnigan*, 507 U.S. 87 (1993) .......... passim

*United States v. Olano*, 507 U.S. 725 (1993) .......... 11, 35

**Fifth Circuit Decisions**

*C.I.R. v. Kelley*, 293 F.2d 904 (5th Cir. 1961) .......... 36

*United States v. Abundiz*, 93 F.4th 825 (5th Cir. 2024) .......... passim

*United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978) .......... 31

*United States v. Carrillo*, 660 F.3d 914 (5th Cir. 2011) .......... 29

*United States v. Cisneros-Gutierrez*, 517 F.3d 751 (5th Cir. 2008) .......... 41

*United States v. Culbertson*, 712 F.3d 235 (5th Cir. 2013) .......... 25, 26

*United States v. Dillon*, 532 F.3d 379 (5th Cir. 2008) .......... passim

*United States v. Escalante-Reyes*, 689 F.3d 415 (5th Cir. 2012) .......... 11, 24, 35

*United States v. Fisher*, 106 F.3d 622 (5th Cir. 1997) .......................................... 39

*United States v. Guidry*, 456 F.3d 493 (5th Cir. 2006) .................................. 15, 16

*United States v. Jones*, 930 F.3d 366 (5th Cir. 2019) ..................................... 28, 29

*United States v. Kinchen*, 729 F.3d 466 (5th Cir. 2013) ................................ passim

*United States v. Martinez-Lugo*, 782 F.3d 198 (5th Cir. 2015)............................. 41

*United States v. Mauskar*, 557 F.3d 219 (5th Cir. 2009) ....................................... 39

*United States v. Medel-Guadalupe*, 987 F.3d 424 (5th Cir. 2021).................. 35, 40

*United States v. Miller*, 520 F.3d 504 (5th Cir. 2008)........................................... 34

*United States v. Mora-Carrillo*, 80 F.4th 712 (5th Cir. 2023) ............................... 47

*United States v. Sanjar*, 876 F.3d 725 (5th Cir. 2017)......................... 34, 35, 36, 38

*United States v. Smith*, 804 F.3d 724 (5th Cir. 2015) .......................................... 28

*United States v. Stuart*, 132 F.4th 892 (5th Cir. 2025).................................... 11, 28

**Other United States Courts of Appeals Decisions**

*United States v. Enjady*, 134 F.3d 1427 (10th Cir. 1998) ..................................... 27

*United States v. Harvel*, 115 F.4th 714 (6th Cir. 2024) ........................................ 27

*United States v. Mound*, 149 F.3d 799 (8th Cir. 1998) .................................... 23, 27

**Rules and Statutes**

18 U.S.C. § 513.........................................................................................12

18 U.S.C. § 1621.......................................................................................46

18 U.S.C. § 2243...................................................................................1, 3, 6

18 U.S.C. § 3231.........................................................................................1

18 U.S.C. § 3742 .......... 1

28 U.S.C. § 1291 .......... 1

Fed. R. Evid. 413 .......... passim

Fed. R. Evid. 403 .......... passim

Fed. R. Evid. 404 .......... passim

Pub. L. No. 103-322, § 320935, 108 Stat. 1796, 2135 (1994) .......... 24

**<u>Sentencing Guidelines</u>**

U.S.S.G. § 3C1.1 .......... passim

U.S.S.G. § 3D1.2 .......... passim

**<u>Secondary Sources</u>**

*Black's Law Dictionary* (12th ed. 2024) .......... 23, 47

## JURISDICTIONAL STATEMENT

The Government first charged Mr. Nix by indictment with two counts of Sexual Abuse of a Minor, a Ward, or an Individual in Federal Custody, in violation of 18 U.S.C. § 2243(b). (ROA.13-15.) The Government then secured a superseding indictment alleging the same two charges. (ROA.49-51.) The district court had original jurisdiction over the criminal prosecution under 18 U.S.C. § 3231.

This Court has appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. The district court entered final judgment against Mr. Nix on December 12, 2025. (ROA.246-49.) Mr. Nix filed his timely notice of appeal on the same day. (ROA.244-45.)

## STATEMENT OF THE ISSUES PRESENTED

**Issue No. I — Rule 413 Criminal-Predicate Failure and Instructional Error**

Did the district court reversibly err when, after admitting D.P.'s testimony without conducting Rule 413's threshold criminal-predicate hearing, it then failed to instruct the jury concerning the jury's exclusive role in determining whether Rule 413 other-acts occurrences were criminal offenses?

**Issue No. II — Rules 404(b) and 403: Admission of Other-Acts Evidence**

Did the district court abuse its discretion by admitting D.P.'s testimony under Rules 404(b) and 403, where the Government never demonstrated that the asserted non-character purposes were genuinely at issue and the testimony's prejudicial force substantially outweighed its probative value?

**Issue No. III — Duplicitous Indictment**

Did Count One of the superseding indictment unconstitutionally permit a non-unanimous verdict by sweeping a two-month range of discrete sexual acts into a single count, in the absence of any instruction requiring unanimity as to a specific act?

**Issue No. IV — Sentencing Guidelines Errors**

Did the district court err by applying a two-level obstruction enhancement on a record reflecting, at most, confusion rather than willful perjury, and by refusing to group Counts One and Two under U.S.S.G. § 3D1.2(b)?

## STATEMENT OF THE CASE

### I. Procedural background.

A federal grand jury indicted Mr. Nix on two counts of sexual abuse of a ward in violation of 18 U.S.C. § 2243(b). (ROA.13-15.) The Government later secured a superseding indictment on the same charges. (ROA.49-51.) After the district court denied a continuance motion (ROA.211-12.), trial began August 14, 2025, and concluded the following day with guilty verdicts on both counts. (ROA.8, 233.)

The district court sentenced Mr. Nix on December 12, 2025, to 27 months concurrent imprisonment on each count, followed by a five-year term of supervised release. (ROA.10, 1143 *et seq.*) Mr. Nix timely filed notice of appeal the same day. (ROA.244-45.)

### II. Factual background.

This appeal arises from a two-day jury trial in which the Government charged a Federal Bureau of Prisons ("BOP") employee with sexual relations with a female inmate at a federal custodial facility. The complainant swore Mr. Nix did it; Mr. Nix swore he did not. At the outset, the case was a mine-run prosecution under the applicable statute.

Two facts complicate that picture: (1) fifteen days before trial, the Government notified defense counsel it intended to call other inmates to testify that they too had sex with Mr. Nix at Carswell Federal Medical Center ("Carswell")

located in Fort Worth, Texas, (ROA.104-13.); and (2) the district court admitted that testimony without conducting Federal Rule of Evidence 413's required threshold determination and then instructed the jury that the other acts constituted "offenses," (ROA.1023-24.).

### A. Mr. Nix's position at BOP put him in contact with inmates.

Mr. Nix, a federal corrections officer with no prior criminal history, worked as a recreational specialist at Carswell. (ROA.407-08, PSR ¶ 56.) Carswell is a BOP facility housing female inmates of all custody designations, including non-medical inmates. (ROA.418.)

Mr. Nix began working at Carswell in August of 2020. (ROA.430.) As a recreational specialist, he worked as a wellness coordinator, developing fitness programming and exercise courses for the inmate population. (ROA.572, 923.)

### B. Doe, a Carswell inmate, reports to prison staff that she engaged in sexual acts with Mr. Nix.

Jane Doe, an inmate who worked as an "orderly" in Carswell's recreation department, assisted the recreation coordinators — including Mr. Nix — with paperwork, teaching courses, and related tasks. (ROA.425-26, 572.)

Doe was scheduled for release from Carswell in August 2021. (ROA.105.) Two weeks before her release, she went into quarantine for COVID-19 precautions and reported to staff that she was experiencing urinary symptoms. (ROA.299.)

Medical staff provided treatment and conducted a urinalysis, which came back negative. (ROA.300, 473-74.)

Frustrated that staff would not test her for a sexually transmitted disease, Doe yelled out that she needed to be checked because she was having sex with a staff member. (ROA.300.) Prison staff then tested her for STDs and for pregnancy; both came back negative. (ROA.300, 479.)

### C. The Government investigates Doe's allegations against Mr. Nix.

Following Doe's disclosure, BOP staff reported the incident per policy, and a special agent interviewed Doe on or about July 22, 2021. (ROA.417, 426, 428-29.) The following day, two agents from the Office of the Inspector General ("OIG") interviewed Doe as well. (ROA.588, 592.)

On July 27th, the OIG agents interviewed Mr. Nix in a private office at Carswell. (ROA.594-95.) Before the recorded interview began, the agents conducted a preliminary interview in which they introduced themselves to Mr. Nix and explained the allegations against him. (ROA.595.) Mr. Nix then signed a Warnings and Assurances form and the agents began recording. (ROA.597-98.)

During the interview, Mr. Nix told the agents that Doe had been flirtatious with him, had tried to kiss him, and that on July 4, 2021, had briefly initiated sexual contact. (ROA.107, 605, 812.) He denied any other sexual activity with Doe or any other inmate. (ROA.107.)

### D. Mr. Nix's 2025 prosecution.

Nearly four years after the 2021 interview, the Government secured a superseding indictment charging Mr. Nix with two counts of sexual abuse of a ward in violation of 18 U.S.C. § 2243(b). (ROA.49-51.) Count One alleged "a sexual act" with Doe between May 1 and July 3, 2021. (ROA.49.) Count Two charged the specific July 4, 2021, act Mr. Nix described to OIG agents. (ROA.50, 107, 605, 812.)

Trial was initially set for June 30, 2025, but counsel moved for an unopposed continuance based on "voluminous discovery including hours of phone calls and transcriptions," which the district court granted, resetting trial to August 14th. (ROA.42-48.)

On July 30 — fifteen days before trial — the Government filed its Notice of Intent to Use Other Acts Evidence Under Federal Rules of Evidence 413 and 404(b), disclosing, *inter alia*, that it intended to call another Carswell inmate, D.P., to testify that Mr. Nix had sexual contact with her on at least four occasions between September 2020 and March 2021. (ROA.104-13.) The Government brought no independent charges based on those allegations. (ROA.49-50.)

Mr. Nix's counsel subsequently moved for a second continuance, explaining that counsel "need[ed] additional time to review the evidence of the new alleged victim" and could not "complete his investigation, let alone find impeachment

evidence in time to satisfy the Court's scheduling deadlines of next week." (ROA.115-18, 33.) The court denied the motion. (ROA.211-12.)

### E. Following a two-day trial, the jury convicted Mr. Nix on both counts.

Both Doe and D.P. testified at trial. (ROA.275, 741.) Doe never testified that Mr. Nix forced himself upon her; she said she believed they were in a relationship. (ROA.554-55, 509-11.)

D.P. testified that she and Mr. Nix had sex on two occasions. (ROA.762.) Three weeks before trial, however, she had told agents it was four sexual encounters, spread over an eight-month period. (ROA.761-62.) She described the encounters as "just a for-the-moment-type thing" and confirmed to agents they were "mostly just something fun" for her. (ROA.750, 763.) She claims she ended things with Mr. Nix around the time she moved units and when she concluded she was not the only inmate involved with him. (ROA.872-73.)

Mr. Nix took the stand in his own defense. (ROA.919-84.) His testimony regarding July 4, 2021, and his prior OIG statement is addressed *infra* Part IV. After deliberating three hours, the jury returned guilty verdicts on both counts. (ROA.1053, 1061-63.)

Pending his sentencing, Mr. Nix was allowed to remain at liberty. (ROA.8.)

### F. Mr. Nix is sentenced to twenty-seven months' imprisonment.

The Presentence Investigation Report ("PSR") recommended an advisory sentencing range of twenty-seven to thirty-three months. (PSR ¶ 87.) Mr. Nix objected to two Guidelines recommendations: that he obstructed justice, warranting a two-level enhancement, and that his convictions should not be grouped under the Guidelines. (Def.'s PSR Resp. at 1–6.)

But the district court overruled both his objections and sentenced Mr. Nix to twenty-seven months concurrent imprisonment on each count. (ROA.247.) Mr. Nix filed his notice of appeal the same day. (ROA.244.)

This appeal follows.

## SUMMARY OF THE ARGUMENT

On appeal, Mr. Nix advances four errors.

The district court admitted D.P.'s other-acts testimony without making the threshold determinations Rule 413 requires. And then, at the instruction stage, it omitted entirely the conditional language that would have told the jury it alone must determine whether D.P.'s encounters with Mr. Nix constituted crimes within Rule 413(d)'s definition. This Court has implicitly approved of a jury instruction in its *Abundiz* decision that opened with "may have committed" language — framing that left the criminal-predicate question open for the jury. Such language was lacking here. Furthermore, the district court's instruction immediately began referring to the other-acts occurrences as "offenses," thus resolving that question before jury deliberations began. The error was plain, it affected Mr. Nix's substantial rights in a trial that turned on credibility, and it eliminated the structural safeguard that makes Rule 413 constitutional.

Second, the district court abused its discretion in admitting D.P.'s other-acts testimony under Rules 404(b) and 403. The Government never established a genuine non-character purpose, and each of this Court's *Kinchen* factors cut against admission. The Government had ample corroboration without D.P.; the extrinsic and charged conduct were categorically different in character and

purpose; and the belated limiting instruction authorized use of D.P.'s testimony for any purpose the jury found relevant.

Third, Count One is duplicitous. It swept a two-month range of discrete sexual acts into a single charge without requiring jury unanimity as to any particular act. The court's unanimity instruction required agreement only as to the count as a whole, leaving each juror free to anchor a guilty verdict on a different encounter. That is the non-unanimity risk the duplicity doctrine exists to prevent.

Fourth, the district court erred when applying an obstruction enhancement and grouping recommendation. As to the former, the district court made no independent finding of materiality, and the PSR's conclusion that Mr. Nix's testimony was "related to" his offense falls short of the applicable *Dunnigan* standard. Each of the five alleged instances of false testimony is traceable to confusion, mistake, or the conditions of a coercive pre-recorded interrogation — not willful perjury. And as for the latter Guidelines recommendation, Mr. Nix's two counts of conviction should also have been treated as part of a single course of conduct against the same victim.

# ARGUMENT

## I. The district court reversibly erred when, after admitting D.P.'s testimony without conducting a Rule 413 threshold criminal-predicate inquiry, it then failed to instruct the jury properly concerning the jury's exclusive role in determining whether Rule 413 other-acts occurrences were criminal offenses.

### A. Standard of review.

This issue presents two errors governed by different standards of review.

The threshold admissibility ruling — the district court's failure to conduct the required Rule 413 analysis before admitting D.P.'s testimony — is reviewed for abuse of discretion. Mr. Nix's trial counsel preserved this claim in his written objection to the Government's other-acts notice. (ROA.200-09.) The district court treated that response as a motion in limine, deferred ruling, and required the Government to seek approval before presenting D.P.'s testimony. (ROA.210.) The court then resolved the objection on the record after the jury was excused on the first day of trial. (ROA.645-46.) This Court reviews for abuse of discretion. *E.g.*, *United States v. Stuart*, 132 F.4th 892, 899 (5th Cir. 2025).

The instructional error — the court's failure to instruct the jury that it must first determine whether D.P.'s encounters with Mr. Nix constituted crimes within Rule 413(d)'s definition, and its repeated use of the word "offenses" to describe those encounters before the jury made any such finding — is reviewed for plain error. *United States v. Olano*, 507 U.S. 725, 732–34 (1993); *United States v. Escalante-Reyes*, 689 F.3d 415, 418 (5th Cir. 2012) (en banc).

### B. Federal Rule of Evidence 413.

Federal Rule of Evidence 413 outlines the permitted use of similar crimes in sexual assault cases:

> (a) *Permitted Uses.* In a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault. The evidence may be considered on any matter to which it is relevant.
>
> (b) *Disclosure to the Defendant.* If the prosecutor intends to offer this evidence, the prosecutor must disclose it to the defendant, including witnesses' statements or a summary of the expected testimony. The prosecutor must do so at least 15 days before trial or at a later time that the court allows for good cause.
>
> (c) *Effect on Other Rules.* This rule does not limit the admission or consideration of evidence under any other rule.
>
> (d) *Definition of "Sexual Assault."* In this rule and Rule 415, "sexual assault" means a crime under federal law or under state law (as "state" is defined in 18 U.S.C. § 513) involving:
>
> > (1) any conduct prohibited by 18 U.S.C. chapter 109A . . . .

Fed. R. Evid. 413(a)–(d).

### C. The district court's charge to the jury.

At the close of evidence, the district court gave the following instruction regarding D.P.'s testimony:

> You have heard evidence that the defendant is accused of engaging in other sexual acts with [D.P.]. The defendant was not convicted of any of these offenses. The defendant is not charged with any of these offenses.
>
> You may consider the evidence of these offenses only if you unanimously find that the offense or offenses you are considering is more likely true than not true by having occurred.

> You decide that by considering all of the evidence of the given offense or offenses and deciding whether it is more likely than not to have occurred. This is a lower standard than beyond a reasonable doubt.
>
> You must disregard the offense or offenses you find to have not been proved as stated in the previous paragraph. The offense or offenses that you find to have been proved, as previously stated, can be considered by you in deciding any matter to which you find them relevant.

(ROA.1023-24.).

### D. Application of law.

Mr. Nix submits that the district court plainly erred in two respects: (1) by admitting D.P.'s testimony without conducting Rule 413's required threshold inquiry; and (2) by then instructing the jury in a manner that resolved the criminal-predicate question before the jury could determine it. He does not contend that the district court's failure to conduct the admissibility inquiry independently requires remand. But that failure is the predicate for the instructional error that does. Because the two errors are intertwined, Mr. Nix addresses both.

Mr. Nix first submits that Rule 413's text explicitly and implicitly establishes a two-step structure operating at two distinct stages.

#### *1. The threshold step: A district court's finding as to what a jury could find.*

At the threshold stage, Rule 413 subsection (a) charges "the court" with the admissibility determination. Fed. R. Evid. 413(a). The court must determine whether a reasonable jury could find by a preponderance of the evidence that the

other act occurred and satisfied Rule 413(d)'s criminal definition. Only if the trial court makes that initial finding does it admit the other-acts evidence for the jury's consideration as to whether the other act constituted "a crime under federal law or under state law" within subsection (d)'s definition. Fed. R. Evid. 413(d).

*United States v. Dillon*, 532 F.3d 379 (5th Cir. 2008), confirms that understanding. In *Dillon*, this Court reviewed admission of Rule 413 "other acts" sexual assault testimony and affirmed the district court's admissions of that evidence. *Id.* at 387, 391. This Court noted that Rule 413 carves out an exception to the general rule governing admissibility: "Generally, evidence of prior bad acts is not admissible to show propensity. Rule 413(a), however, allows the admission of evidence of prior sexual assaults for any relevant purpose, including to show propensity, in sexual assault cases." *Id.* at 387 (internal citations omitted). This Court then observed that a prior "conviction" need not be shown:

> To be admissible under Rule 413, the uncharged "offense of sexual assault" need not be established by a conviction, but the district court must make a preliminary finding that a jury could reasonably find by a preponderance of the evidence that the defendant committed the other act and that it constituted an "offense of sexual assault" for purposes of Rule 413.

*Id.* This Court also observed that any such admission of Rule 413 evidence "is still subject to the Rule 403 balancing test." *Id.*

In *Dillon*, after the Government gave timely notice of its intent to introduce Rule 413 evidence, the district court held a hearing at which it approved the admission of some of the Government's proposed other-acts evidence:

> The district court held a hearing and determined that it would admit the testimony of Jones and Cheneau, which it concluded was such as to allow a jury to reasonably find by a preponderance of the evidence that Dillon committed an offense of sexual assault on each of them, and that the probative value of such evidence was not substantially outweighed by the danger of unfair prejudice under Rule 403. However, the court excluded the testimony of the two other women under the Rule 403 balancing test.

*Id.* at 387–88.

Similarly, in *United States v. Guidry*, 456 F.3d 493 (5th Cir. 2006), this Court reviewed a challenge to Rule 413 other-acts evidence. In that case, the Government's request to sponsor such evidence came after trial had commenced when, two days after trial began, the Government became aware of relevant other-acts testimony and it petitioned the court to allow the mid-trial admission. *Id.* at 499. The district court held a hearing outside the jury's presence to hear from the proposed witness and to determine whether to admit her testimony. *Id.* The district court determined the Government had shown good cause for excusing Rule 413(d)'s fifteen-day notice period:

> The Court having held a preliminary hearing outside of the presence of the jury and having heard the witness's testimony finds that . . . a jury could reasonably find by a preponderance of the evidence that the other act did, indeed, occur. And that Rule 413 evidence, it is Congressional intent to allow such testimony [sic].

*Id*. at 499–500.

But Mr. Nix's trial unfolded differently. The Government filed its Rule 413 notice fifteen days before trial. (ROA.104-13.) Mr. Nix's counsel promptly objected and moved for a continuance to investigate D.P.'s allegations. (ROA.115-19.) The district court denied the continuance and declined to schedule a hearing. (ROA.210-11.) It never heard from D.P. outside the jury's presence. (*See* ROA.741.). It made no finding that a jury could find by a preponderance that D.P.'s encounters with Mr. Nix constituted crimes within Rule 413(d)'s definition. *See, e.g.*, *Dillon*, 532 F.3d at 379 ("[T]he district court must make a preliminary finding that a jury could reasonably find by a preponderance of the evidence that . . . the other act . . . constituted an 'offense of sexual assault' for purposes of Rule 413."). The threshold step went meaningfully undone.

Certainly Rule 413's express language and the interpretive caselaw support Mr. Nix's reading and understanding of the Rule's application: subsection (a) charges "the court" with the admissibility determination, leaving the substantive question — whether the other act constituted a crime — to be resolved by the jury. *See generally Huddleston v. United States*, 485 U.S. 681, 690 (1988) (under Rule 104(b), the jury — not the court — ultimately determines whether the conditional fact has been established); *Dillon*, 532 F.3d at 387 (requiring district court to make

a finding whether "a jury could reasonably find" the criminal predicate — a framing that presupposes the jury makes the ultimate determination).

#### *2. The instructional step: Ensuring the jury determines that the other acts were crimes.*

Assuming a court satisfies the threshold requirement, the evidence is admitted and presented to the jury during trial. Then, at the instructional stage, before deliberations, the court instructs the jury on the other-acts evidence's permissible use. Armed with a proper instruction, the jury — not the court — then makes the ultimate determination: whether the other act occurred and whether it constituted a crime within Rule 413(d)'s definition. If it makes this determination, the jury can rely on this evidence in support of the charged offense. But the point is this: the criminal-predicate question is for the jury alone to resolve.

### E. What went wrong here: The district court circumvented Rule 413's required framework at both stages.

#### *1. At the admissibility stage, the court committed to admitting D.P.'s testimony perfunctorily without any advance review or consideration.*

In accordance with Rule 413(b), the Government notified the district court fifteen days before trial that it intended to call D.P. to provide other-acts testimony. (ROA.104-13.) Mr. Nix's trial counsel filed a substantive written objection under Rule 413, quoting Rule 413(a) and (d) verbatim and invoking *Dillon*'s Rule 403 overlay. (ROA.200-09.) The district court did not set the matter for hearing but instead opted to treat that response as a motion in limine, deferring its ruling on the

motion and requiring the Government to seek approval before presenting D.P.'s testimony. (ROA.210.)

At the close of the first day of trial, outside the jury's presence, the district court addressed D.P.'s anticipated testimony. (ROA.644-46.) Earlier that day, at a sidebar outside the jury's presence, trial counsel had objected to the Government's desire to elicit testimony from Doe concerning D.P. (ROA.554-56.) The court explained that it had overruled that objection at the bench and was now memorializing its ruling on the record:

> [T]he probative value of that information was high. I do not believe that there was any — that the probative value was substantially outweighed by any prejudicial effect. So, to the extent there was a 403 issue, I believe it was properly admitted. So I overruled your objection at the bench, but your objection was timely and you agreed to allow me to make the ruling on the record outside the presence of the jury for efficiency sake, so we didn't have to excuse the jury at that time.

(ROA.645-46.) The Government then explained that D.P. was the first witness for the next day and the Government did reference Rule 413. (ROA.646.). The district court's response was simply: "And okay, other than her, what other witnesses do you have?" (ROA.646-47.)

Rule 413 does not appear anywhere in the court's ruling. While the Government's counsel mentioned Rule 413 in the colloquy that followed the ruling, the court did not respond to or adopt that framing. (ROA.646-47.) No Rule 413 threshold step finding appears explicitly or implicitly in the proceedings.

To be sure, Mr. Nix does not contend that the threshold error would *independently* require remand, at least not on *this* record.[1] On these facts, had the district court conducted the required threshold inquiry, the Government almost certainly would have satisfied Rule 413(d)(1)'s criminal-predicate requirement as a matter of course.[2]

But the threshold failure still matters here not as an independent basis for remand but rather because it is the predicate that made the district court's *instructional* error all the more likely. A court that had properly engaged the criminal-predicate question at the admissibility stage — asking whether a jury could reasonably find that D.P.'s encounters with Mr. Nix constituted crimes within Rule 413(d)'s definition — would certainly have recognized that the jury would face the same question at the instruction stage. So, the district court's failure to engage it at all created the conditions for the instructional error that followed.

These two errors are not independent, but are two manifestations of the same underlying failure to adhere to Rule 413's requirements at either stage. That shared origin matters because the prejudice from each error compounded the other. Their compounding began before the trial even started. Both failures are before this

[1] Rule 413(d)(1) defines "sexual assault" to include "any conduct prohibited by 18 U.S.C. chapter 109A," the chapter which includes Section 2243, Mr. Nix's statute of conviction.

[2] That acknowledgment, however, is cabined to this record and this definitional provision. Rule 413(d) is not limited to federal chapter 109A offenses — its remaining subsections reach specific categories of conduct under both federal and state law, where whether a given act qualifies may not be so readily apparent.

Court. But it is the instructional error — not the admissibility failure — that ultimately provides the ground for relief.

#### 2. *At the instruction stage, the district court omitted the criminal-predicate finding and resolved it in the Government's favor before the jury deliberated.*

Consider again how the district court instructed the jury:

> You have heard evidence that the defendant is accused of engaging in other sexual acts with [D.P.]. The defendant was not convicted of any of these offenses. The defendant is not charged with any of these offenses.
>
> You may consider the evidence of these offenses only if you unanimously find that the offense or offenses you are considering is more likely true than not true by having occurred.
>
> You decide that by considering all of the evidence of the given offense or offenses and deciding whether it is more likely than not to have occurred. This is a lower standard than beyond a reasonable doubt.
>
> You must disregard the offense or offenses you find to have not been proved as stated in the previous paragraph. The offense or offenses that you find to have been proved, as previously stated, can be considered by you in deciding any matter to which you find them relevant.

(ROA.1023-24.) The instruction's deficiency is two-fold. First, it contained no conditional language informing the jury that the criminal-predicate determination — whether D.P.'s encounters with Mr. Nix constituted crimes within Rule 413(d)'s definition — was the jury's alone to make. Second, by repeatedly substituting "offenses" for "acts," the court resolved that question before deliberations began.

*United States v. Abundiz*, 93 F.4th 825 (5th Cir. 2024), illustrates that deficiency. There, this Court reviewed a Rule 413 evidentiary challenge and noted, in doing so, that "this Circuit has yet to adopt a FRE 413 . . . pattern jury instruction." *Id.* at 831. The district court in that case crafted the following Rule 413 instruction based on other circuits' caselaw:

> You have heard evidence that the defendant *may have committed* other offenses of sexual abuse and downloading of child pornography and child sexual abuse material. The defendant was not convicted of any of these offenses. The defendant is not charged with any of these offenses. You may consider the evidence of any of these offenses only if you unanimously find that the offense or offenses you are considering is more likely true than not true of having occurred.
>
> You decide that by considering all of the evidence of the given offense and deciding whether it is more likely than not to have occurred. This is a lower standard than beyond a reasonable doubt.
>
> You must disregard the offense or offenses you find to have not been proved as stated in the previous paragraph. The offense or offenses that you find to have been proved as previously stated, can be considered by you in deciding any matter for which you find them relevant.

*Id*. at 831 & n.10 (emphasis added). In addressing the defendant's plain-error challenge, this Court concluded that sufficient implicit findings existed and that the instruction's conditional language cured any remaining error — implicitly approving the instruction as a whole. *Id*. at 837–38.

*Abundiz* helps illustrate what went wrong here: the *Abundiz* instruction couched the other-acts evidence in the conditional, whereas the instruction below contained no such qualifier.

| | ***Abundiz* Instruction (Approved)** | **Mr. Nix Instruction (Deficient)** |
|---|---|---|
| **Criminal-predicate framing** | Defendant ***"may have committed other offenses."*** Conditional opener frames the acts as unresolved, leaving criminal character open for the jury to determine. | No conditional opener. Language that Defendant was "accused of engaging in other sexual acts" immediately abandoned in favor of "offenses" as a settled predicate. |
| **Effect on jury's role** | Jury is implicitly directed to determine whether the acts are criminal in nature. | Criminal character resolved before deliberations; jury finds only the occurrence or non-occurrence of acts the court repeatedly called "offenses" without a conditional qualifier. |

As depicted, the *Abundiz* instruction preserved the jury's role; Mr. Nix's instruction did not.

The district court's instruction to the jury makes the omission plain. The court opened with neutral language, telling the jury that Mr. Nix "is accused of engaging in other sexual acts with [D.P.]." (ROA.1023.) To be sure, *that* framing was correct: at the threshold, the conduct was alleged, not established. But the instruction immediately abandoned that neutrality. In the very next sentence — before any instruction that the jury would deliberate on other-acts criminality — the court told the jury: "The defendant was not convicted of any of these *offenses*." (ROA.1023 (emphasis added).) And again: "The defendant is not charged with any of these *offenses*." (ROA.1023 (emphasis added).)

And this shift from "acts" to "offenses" was not irrelevant. An "act" is neutral, a thing that happened; an "offense" is a violation of law. *Compare Act*, Black's Law Dictionary (12th ed. 2024) ("Something done or performed . . . ."), *with Offense*, Black's Law Dictionary (12th ed. 2024) ("A violation of the law; a crime . . . ."). By substituting "offenses" throughout the charge — and by providing no initial conditional instruction telling the jury that the criminal-predicate determination was its alone to make — the court answered that question before the jury could determine it for itself, contrary to the dictates of Rule 413. The question of whether Mr. Nix's other acts "constituted an 'offense of sexual assault'" was one for the jury, but the jury was told those acts were criminal, not asked. *Dillon*, 532 F.3d at 387.

Other circuits do not allow such an instruction. In *United States v. Mound*, 149 F.3d 799, 801 (8th Cir. 1998), the Eighth Circuit approved an instruction that told the jury a prior conviction "does not mean that he is guilty of any of the charges" — language that preserved the jury's independent role in assessing the uncharged conduct. Both *Abundiz* and *Mound* left the criminal-character determination with the jury, right where Rule 413 assigns it.

But *Abundiz*'s instruction preceded its use of "offenses" with conditional language — the defendant "*may have* committed other offenses of sexual abuse." *Abundiz*, 93 F.4th at 839 n.57 (emphasis added). That conditional framing

preserved the jury's role by leaving the criminal-character question open. In contrast, the instruction in Mr. Nix's case did not. It opened with neutral-enough language but then declared D.P.'s encounters to be "offenses" without any conditional qualifier — resolving the criminal-predicate question that the instruction's opening "accused of" language had left open.

By treating D.P.'s encounters as "offenses" throughout and in the absence of an initial instruction explaining to the jury that it determined other-acts criminality, the court preempted the jury's evaluation of whether those encounters satisfied Rule 413(d)'s definition. The district court's instruction failed the requisite standard.

### F. Mr. Nix's claim survives plain error review.

#### *1. There was error and it was plain.*

The district court's errors are plain. Rule 413 has been in effect since 1995.[3] Its text is unambiguous: the rule authorizes jury consideration of other-acts evidence only where the other act constitutes "a crime under federal law or under state law." Fed. R. Evid. 413(a), (d). An error flowing directly and unavoidably from that unambiguous text is plain. *Escalante-Reyes*, 689 F.3d at 419 (explaining plain error must be "clear or obvious, rather than subject to reasonable dispute").

[3] Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 320935, 108 Stat. 1796, 2135 (1994) (effective July 9, 1995); *see also* Fed. R. Evid. 413 advisory committee's note (1994) (confirming effective date of July 9, 1995).

This Court's admissibility standard reinforces that conclusion. *Dillon* requires the district court to find that "a jury could reasonably find" the criminal predicate before admitting the evidence. 532 F.3d at 387. That framing simultaneously presupposes that the jury — not the court — then makes the ultimate determination. An instruction that resolves the criminal-predicate question before deliberations begin contradicts that presupposition.

That is precisely what happened here. The instruction neither asked the jury whether D.P.'s encounters with Mr. Nix were crimes nor provided any conditional language telling the jury that determination was the jury's to make; it simply told the jury the encounters were offenses before deliberations began. That contravenes Rule 413's plain text and the framework *Dillon* and *Abundiz* together establish. The district court recognized that a limiting instruction was required and gave one, but the instruction it gave resolved one of the questions Rule 413 reserves for the jury. That error was plain.

#### ***2. The twofold error affected Mr. Nix's substantial rights.***

The substantial-rights prong requires "the defendant [to] demonstrate that the error affected the outcome of the district court proceedings." *United States v. Culbertson*, 712 F.3d 235, 243 (5th Cir. 2013). That standard is satisfied here.

D.P.'s testimony was the Government's corroboration for the charged conduct. She was the only witness who described uncharged sexual activity with

Mr. Nix — activity she characterized as "just a for-the-moment-type thing" and, on cross-examination, as simply fun. (ROA.750.) Had the jury been properly instructed that it alone determined whether those encounters were crimes, there is a reasonable probability the jury would have reached a different verdict on the charged counts.

Nor is that probability speculative. The trial turned on credibility: Mr. Nix denied the charged conduct; the Government's case relied on Doe's account, corroborated principally by D.P.'s testimony. In that credibility contest, the court's characterization of D.P.'s encounters as "offenses" — without any conditional instruction telling the jury that the criminal-predicate determination was the jury's to make — was not neutral. It carried into the jury room the court's own judicial imprimatur on the question the jury was supposed to decide for itself.

Moreover, the usual presumption that juries comply with limiting instructions cannot rescue an instruction that is itself the wellspring of the error. The presumption presupposes a correct instruction.

#### *3. The error seriously affected the fairness and integrity of the proceedings.*

"[U]nder the fourth prong of plain-error review, '[this court] will exercise [its] discretion to correct plain error if it seriously affected the fairness, integrity, or public reputation of the judicial proceeding.'" *Culbertson*, 712 F.3d at 243. The fourth plain-error prong is satisfied because the errors here did not merely misstate

the law, they eviscerated the structural protection that makes Rule 413 constitutional in the first place.

Courts have upheld Rule 413's constitutionality precisely because its criminal-predicate requirement, combined with Rule 403 balancing, guards against the unfair use of uncharged conduct. *See, e.g.*, *United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir. 1998); *Mound*, 149 F.3d at 801; *United States v. Harvel*, 115 F.4th 714, 731–35 (6th Cir. 2024). That safeguard depends entirely on the jury performing its assigned role, namely, determining whether the uncharged conduct was criminal before relying on it. When the instruction resolves that question for the jury, the safeguard disappears.

The instruction below resolved the criminal-predicate question before the jury could determine it, by labeling D.P.'s encounters "offenses" without an accompanying conditional instruction explaining that the jury, not the court, would determine whether those encounters qualified as crimes under Rule 413(d). The district court, in effect, supplied the required finding. The jury was left to deliberate on the assumption that D.P.'s testimony described criminal conduct, without ever being asked to make that determination itself.

Permitting the conviction to stand on that foundation would signal that Rule 413's criminal-predicate requirement is optional. That is precisely the kind of error

that undermines the public reputation of judicial proceedings. *E.g.*, *Rosales-Mireles v. United States*, 585 U.S. 129, 139–40 (2018).

The Court should vacate Mr. Nix's conviction and remand for a new trial.

## II. The district court abused its discretion in admitting D.P.'s testimony under Federal Rules of Evidence 404(b) and 403.

### A. Standard of review.

Mr. Nix preserved this error in his Response to the Government's Notice of Intent to Use Other Acts Evidence Under Rules 404(b) and 413. (ROA.200-09.) This Court reviews for abuse of discretion. *E.g.*, *Stuart*, 132 F.4th at 899.

### B. The Government's other-acts evidence was inadmissible under Rule 404(b).

Under Rule 404(b) evidence of other acts is "not admissible to prove a person's character," but "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). The Government introduced other-acts evidence purportedly to show identity, knowledge, intent, motive, and lack of mistake. (ROA.112, 340-41, 870-73.)

As a threshold issue, "evidence of an uncharged crime or 'other act' must be sufficient to support a finding that the crime or act actually occurred." *United States v. Smith*, 804 F.3d 724, 735 (5th Cir. 2015). Its admissibility then hinges on whether it is relevant to an issue other than character, and whether its probative value is not substantially outweighed by undue prejudice. *Id.*; *see also United*

*States v. Jones*, 930 F.3d 366, 373 (5th Cir. 2019). The burden rests with the Government. *Jones*, 930 F.3d at 373.

In its notice, the Government provided no evidence that Mr. Nix committed the alleged other acts beyond D.P.'s own testimony. (ROA.104-13, 870-73.) D.P.'s account was not internally consistent: she told Government agents the encounters numbered four; she told the jury two. (ROA.884-85.) But this inconsistency, while proper impeachment material, does not resolve the question of admissibility — which turns on whether the Rule 403 balancing factors support admission.

The Government's notice also identified identity, knowledge, intent, motive, and lack of mistake as its non-character purposes. (ROA.112.) Under circuit precedent, Mr. Nix's not-guilty plea placed those at issue. *See United States v. Carrillo*, 660 F.3d 914, 929 (5th Cir. 2011). But even a legitimate non-character purpose does not survive Rule 403 when the *United States v. Kinchen* factors cut against admission. 729 F.3d 466 (5th Cir. 2013). Under *Kinchen*, this Court weighs four factors: the Government's need for the extrinsic evidence, the similarity between the extrinsic and charged act, the time separating them, and the court's limiting instructions. 729 F.3d at 473. Each cut against admission here.

#### ***1. The Government's need for the extrinsic evidence.***

The Government's need for the D.P. extrinsic evidence weighs heavily against admission, because D.P.'s testimony served only to inflame the jury against

Mr. Nix and imply a propensity to commit the crime. *See id.* at 473. The Government already had testimony from Doe that the sexual activity with Mr. Nix was "fairly regular," occurred in several locations, and followed a discernible pattern. (ROA.289-94.) In addition to Doe's testimony, the Government presented Nurse Anastasia Sancho's corroboration of Doe's outcry, and OIG Special Agent Ivan Martinez's account of Mr. Nix's admission. D.P. added nothing to that record except the propensity inference Rule 404(b) forbids.

The Government's corroboration ran deeper still. Nurse Sancho testified that Doe told her she was having a sexual relationship with a staff member and, for that reason, believed she might have an STD. (ROA.475.) Special Agent Martinez testified that Mr. Nix admitted to a sexual act with Doe during the OIG interview. (ROA.627-28.) Against that record, D.P.'s testimony added little legitimate probative value — but contributed substantially to the risk of unfair prejudice.

The Government's own closing argument confirms this point. Rather than invoking D.P.'s testimony for any of the non-character purposes it identified in its notice — intent, knowledge, motive — the Government used her simply to increase the witness count: "It's not just a he said/she said. It's Ms. [Doe] said, Ms. [Brandy] Wright said, and Ms. [D.P.] also said." (ROA.1034.) That is propensity reasoning by headcount, and it is precisely what Rule 404(b) prohibits.

### *2. The similarity between the extrinsic and charged acts.*

D.P.'s testimony also fails the similarity factor. The extrinsic evidence must be reviewed in relation to the actual issue *for which it is admitted* — here, Mr. Nix's knowledge, intent, and motive — and it is not enough that the extrinsic and charged acts both involved sex with inmates at BOP Carswell. *See United States v. Beechum*, 582 F.2d 898, 911 & n.15 (5th Cir. 1978) (en banc) (explaining that similarity must be assessed in relation to the specific issue for which the evidence is offered, not merely the general category of conduct).

Here, the Government charged Mr. Nix with (1) a sex act with Doe between May 1 and July 3, 2021, and (2) a specific sex act on July 4, 2021. (ROA.49-50.) The intent, knowledge, and motive relevant to the charged conduct bear little resemblance to what D.P.'s testimony reflects.

The distinction is material inasmuch as Doe alleged a special relationship with Mr. Nix. (ROA.554-55, 509-11.) In contrast, D.P. described the encounters as "just a for-the-moment-type thing," (ROA.750.), and confirmed to agents three weeks before trial that they were "mostly just something fun" for her to do. (ROA.763.) D.P. ended all contact with Mr. Nix after she purportedly concluded she was not the only inmate with whom he was involved. (ROA.872-73.)

Doe, by contrast, described a months-long relationship she believed would continue after her release — one in which Mr. Nix had promised to take care of her

and help her relocate to Texas. (ROA.546-47.) The two relationships were not merely different in degree — they were different in kind, which is precisely what the similarity factor requires the court to assess.

Also, the alleged modus operandi with regard to the two victims is distinct. Mr. Nix was alleged to have used Doe's status as an orderly under his supervision to create opportunities for sexual encounters in the places where he worked. In contrast, D.P.'s account differed substantially: she neither alleged a relationship with Mr. Nix nor alleged he used his authority to take advantage of her. D.P. testified that they had sex in the outside recreation office and once in her unit. (ROA.746-49.) The similarity is insufficient to support admission.

***3. The amount of time separating the two acts.***

This third factor is, at best, neutral. The Government's notice placed the extrinsic acts between September 2020 and March 2021 — within eight months of the charged conduct. That proximity does not meaningfully weigh against the Government. *Cf. Kinchen*, 729 F.3d at 473. But it does not rescue the other-acts evidence either, because the other three factors cut decisively against admission.

***4. The district court's limiting instructions.***

This factor also cuts against the Government. When D.P.'s testimony was presented (ROA.863.), the district court did not give any limiting instruction. *Cf. Kinchen*, 729 F.3d at 473. While the court did offer a limiting instruction in the

final jury charge (ROA.1023-24.), that belated timing did little to blunt the prejudice already established. *See also supra* Part I.

Worse still, the instruction affirmatively undermined its supposed limiting function. Rather than confining the jury's use of D.P.'s testimony to the non-character purposes the Government identified — intent, knowledge, and motive — the instruction directed that any encounter found more likely than not to have occurred "can be considered by you in deciding *any matter* to which you find them relevant." (ROA.1024 (emphasis added).) That language imposed no limit at all. An instruction that purports to limit other-acts evidence while authorizing its use for "any matter" the jury finds relevant does not limit — it green-lights. That this limitless instruction arrived in the final charge, with no contemporaneous instruction when the testimony was presented, compounded the prejudice.

In sum, the *Kinchen* factors cut in favor of Mr. Nix, and the district court reversibly erred by overruling Mr. Nix's objection to the other-acts evidence under Federal Rule of Evidence 404(b) and by permitting the testimony.

## III. Count One of the superseding indictment is unconstitutionally duplicitous.

Mr. Nix's conviction on Count No. 1 was duplicitous, because it charged a two-month range of discrete sexual acts as a single offense, exposing Mr. Nix to conviction by a non-unanimous jury. (ROA.49, 233.)

As this Court has explained, "[d]uplicity occurs when a single count alleges multiple offenses." *United States v. Sanjar*, 876 F.3d 725, 737 (5th Cir. 2017). "The ban against duplicitous indictments derives from four concerns: prejudicial evidentiary rulings at trial; the lack of adequate notice of the nature of the charges against the defendant; prejudice in obtaining appellate review and prevention of double jeopardy; and risk of a jury's nonunanimous verdict." *United States v. Miller*, 520 F.3d 504, 513 n.16 (5th Cir. 2008) (citation omitted).

But the most common way a duplicitous indictment "harms a defendant is when it allows a nonunanimous verdict with all jurors finding the defendant guilty but not necessarily of the same offense." *Sanjar*, 876 F.3d at 737. This result violates a criminal defendant's Sixth Amendment right to a unanimous verdict. *E.g.*, *Ramos v. Louisiana*, 590 U.S. 83, 87 (2020) (holding that the Sixth Amendment requires a unanimous jury verdict for conviction of a serious offense). Here, the district court's unanimity instruction required only that the jury agree on Count One as a whole — not on any specific sexual act within the two-month range the count swept in.

**A. Standard of review.**

Because Mr. Nix did not raise this issue in the district court, this Court reviews for plain error. To prevail, he must show: (1) error; (2) that is plain or obvious; (3) that affected his substantial rights; and (4) that seriously affects the

fairness, integrity, or public reputation of judicial proceedings. *Olano*, 507 U.S. at 732–34; *Escalante-Reyes*, 689 F.3d at 418. A duplicitous indictment clears that bar only if the defendant was prejudiced by the duplicity. *United States v. Medel-Guadalupe*, 987 F.3d 424, 428 (5th Cir. 2021); *see also Sanjar*, 876 F.3d at 737.

**B. Count One was duplicitous because it swept a two-month range of discrete sexual acts into a single count without requiring unanimity as to any one act.**

In its verdict form, the jury found Mr. Nix guilty "as to Count One of the superseding indictment." (ROA.233.) Count One charged that "[f]rom between on or about May 1, 2021, and July 3, 2021, . . . defendant, Marerllis Nix, did knowingly engage in a sexual act with Jane Doe." (ROA.49 (emphasis omitted).) That range encompassed not one act but many, each a discrete event the jury could have found separately, and none of which the verdict form required the jury to agree upon. By sweeping all of them into a single charge, Count One exposed Mr. Nix to conviction on a non-unanimous verdict — a risk the trial record amply confirms was not theoretical.

The jury could have convicted Mr. Nix on Count One based on different alleged sexual acts — the jurors were not required to agree on the same one. The indictment offered no limiting principle: it identified a two-month window with several purported encounters, leaving each juror free to convict based on

whichever encounter they found most credible. That is precisely the non-unanimity risk the duplicity doctrine is designed to prevent.

As used in the indictment, the word "a" is non-exclusive. It can refer to several sexual acts with Doe. (ROA.49.) *See, e.g.*, *C.I.R. v. Kelley*, 293 F.2d 904, 912 & n.18 (5th Cir. 1961) (construing "a" to encompass both the singular and plural). That non-exclusivity exposed Mr. Nix to a non-unanimous verdict.

For instance, and as an illustrative example only, if Mr. Nix committed one sexual act on May 3, another on June 15, and a third on June 29, one can truly say that he committed "*a* sexual act" within the range of May 1 to July 3, just as one can truly say he committed three sexual acts within the same range. (ROA.49 (emphasis added).) *See also Kelley*, 293 F.2d at 912 n.18 ("More often a has the indefinite meaning, although it did originally mean 'one.'") Equally, if five jurors concluded only the May 3 sexual act occurred beyond a reasonable doubt, three others only the June 15 act, and the remaining four only the June 29 act, all twelve jurors could convict Mr. Nix for "a sexual act with Jane Doe" between the dates of "May 1, 2021, and July 3, 2021." (ROA.49.) But the unanimity requirement would go unmet. *Ramos*, 590 U.S. at 87; *Sanjar*, 876 F.3d at 737. The trial record shows the jury had precisely this menu of discrete encounters from which to choose, and nothing in the court's instructions required them to agree on the same encounter.

The flaw in the indictment's construction is confirmed by the Government's own theory of the case — that Mr. Nix and Doe had an ongoing sexual relationship between May 1 and July 3, 2021. In the Government's opening statement, the attorney explained: "you will also he[a]r[] from [Doe] that sexual intercourse became fairly regular." (ROA.408.) Doe testified that the sex acts with Mr. Nix "started in May." (ROA.301.) She spoke at length about the first romantic encounter, which she testified happened when Mr. Nix asked Doe to clean his office and then kissed her after she finished cleaning. (ROA.284-87.) She further testified that there were "[a] lot" of subsequent encounters. (ROA.287.) Doe explained that "[a] lot of the[ sexual encounters] occurred in the supply closet in the inside rec[reation]." (ROA.288-89.)

Other testimony only underscored the possibility of the jury members keying in on separate incidents. For example, other encounters occurred "[i]n the clerk's office in inside rec[reation, a]nd in his office and the workout room, both in inside rec[reation], and in the shack outside rec[reation]." (ROA.288-89.) Indeed, the Government emphasized the repetitive nature of these encounters, asking Doe to tell the jury, "whether it was just one time or was it fairly regularly?" (ROA.289.) Doe obliged, explaining that "[i]t was fairly regular. It was every Sunday morning became like a regular and some here and there during the week." (ROA.289.)

Continuing the trend, Brandy Wright, another inmate, testified for the Government and stated that she served as watchout "several times" while Mr. Nix and Doe were intimate. (ROA.636-37.) All of this testimony mirrors the understanding of the Government who, in its Notice of Intent to Use Other Acts Evidence Under Federal Rules of Evidence 413 and 404(b), stated that "from May 2021, until July 2021, recreational specialist Nix had engaged in sexual activity with her, to include vaginal and oral acts, on 10 to 12 occasions." (ROA.105.)

Indeed, the Government made the point — that *any* sexual act between May 1 and July 3 was sufficient for a guilty verdict on Count One — explicit in closing argument: "If you believe a sexual act occurred between [Mr. Nix and Doe], if you believe any sexual act occurred during that date range that was testified to, that is guilty on Count I." (ROA.1028.)

The record confirms that jurors could have convicted Mr. Nix on Count One non-unanimously, each anchoring a guilty verdict on a different incident. One juror may have believed the supply-closet incident, another the first inside recreation incident, and a third the second inside recreation incident. Each of these three could still have voted guilty as to Count One, even though each contemplated Mr. Nix guilty of separate offenses. Because Count One "allow[ed] a nonunanimous verdict with all jurors finding the defendant guilty but not necessarily of the same offense," it is erroneously duplicitous. *Sanjar*, 876 F.3d at 737.

To be sure, in some instances, a district court can cure the defective indictment and avoid the danger of a nonunanimous jury verdict by instructing the jury on the unanimity requirement. *See United States v. Fisher*, 106 F.3d 622, 633 (5th Cir. 1997), *abrogated on other grounds by Ohler v. United States*, 529 U.S. 753 (2000). Such an instruction must explain to the jury that it must be unanimous as to the *singular act* they find to be a violation of the charged law. *See United States v. Mauskar*, 557 F.3d 219, 226–27 (5th Cir. 2009).

In *Mauskar*, this Court concluded the following instruction was sufficient to guard against a non-unanimous verdict:

> Your verdict, whether it is guilty or not guilty, must be unanimous. The following instruction applies to the unanimity requirement as to count one.
>
> As I have explained, count one of the second superseding indictment accuses the defendant of committing the crime of conspiracy in up to three different ways. We went over this. . . .
>
> The government does not have to prove all three of these objects of conspiracy for you to return a verdict of guilty on this charge. Proof beyond a reasonable doubt on one object of the conspiracy is enough. But in order to return a guilty verdict, all twelve of you must agree that the same one has been proved. . . . In other words, if four of you believe A was proved and four of you believe B was proved and four of you believe C was proved, you're not unanimous. Everybody has to agree on the same one for you to find a guilty verdict.

*Id.*

But in Mr. Nix's case, the district court's instructions did not cure the defective indictment or protect against the danger of a non-unanimous jury verdict.

The trial court only instructed the jury that its "verdict must be unanimous as to *each Count* of the superseding indictment," but did not require that the jury be unanimous as to a specific sexual act alleged within the May 1 to July 3 date range. (ROA.1024 (emphasis added).)

### C. This error survives plain error review.

Even under the stringent plain-error standard, this Court should vacate Mr. Nix's conviction as to Count One. The error here was plain, and Mr. Nix has shown he was prejudiced by the danger of a non-unanimous jury verdict. *See Medel-Guadalupe*, 987 F.3d at 428 (outlining plain-error standard). Furthermore, the error affected his substantial rights. At a very minimum, vacatur of Mr. Nix's Count No. 1 conviction would eliminate the $100 special assessment levied against him for that count. (ROA.246.) And the Supreme Court has held that the presence of an additional special assessment "amounts to cumulative punishment not authorized by Congress." *Rutledge v. United States*, 517 U.S. 292, 302–03 (1996).

Moreover, the "separate *conviction*, apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored." *Id.* at 302 (quoting *Ball v. United States*, 470 U.S. 856, 865 (1985)).[4] Accordingly, this Court

[4] *Ball v. United States*, 470 U.S. 856, 865 (1985) ("For example, the presence of two convictions on the record may delay the defendant's eligibility for parole or result in an increased sentence under a recidivist statute for a future offense. Moreover, the second conviction may be used to impeach the defendant's credibility and certainly carries the societal stigma accompanying any criminal conviction. Thus, the second conviction, even if it results in no greater sentence, is an impermissible punishment." (internal citations omitted)).

should exercise its discretion under the fourth prong to correct the imposition of a wrongly levied conviction, a conviction the record cannot support. *See generally Rosales-Mireles*, 585 U.S. at 138 (citing *Clyatt v. United States*, 197 U.S. 207, 222 (1905) to note that it "revers[ed] [a] judgment for plain error where the Government presented insufficient evidence to sustain conviction").

## IV. The district court erred in calculating Mr. Nix's Guidelines range by applying an unsupported obstruction enhancement and by refusing to group the two counts under U.S.S.G. § 3D1.2(b).

### A. Standard of review.

By filing written objections to the PSR Guidelines recommendations on each enhancement, Mr. Nix preserved error. (Def.'s PSR Resp. at 1–6.) This Court will therefore review the district court's fact findings for clear error but will review the district court's interpretation and application of the Guidelines de novo. *E.g.*, *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008); *United States v. Martinez-Lugo*, 782 F.3d 198, 201 (5th Cir. 2015).

### B. Mr. Nix's testimony at trial.

Mr. Nix testified in his own defense. (ROA.919.) He described his role at Carswell as a recreational specialist, responsible for fitness programming, coordinating class rosters, and managing orderly assignments across a population of approximately 1,500 inmates. (ROA.922-24.) He testified that two recreation specialists were always scheduled, one inside and one outside, with a supervisor always present. (ROA.931.) He acknowledged, on direct examination, a single

incident on July 4, 2021, in which Doe briefly initiated sexual contact with him in the shared office before he froze, stepped back, and left. (ROA.942-46.) He denied any other sexual contact with any other inmate at any time. (ROA.946-48.)

On July 27, 2021, before any recording began, Mr. Nix testified that OIG agents summoned him to a room, told him he had gotten an inmate pregnant and given her an STD, and questioned him for approximately fifteen minutes. (ROA.950-51.) Mr. Nix testified he was "very nervous" from the moment agents made those disclosures. (ROA.950.) Only after that unrecorded session did the agents activate the recorder and begin the recorded interview. (ROA.950, 954.) Mr. Nix testified at trial that he did not receive or review the voluntary-interview form until after the interview concluded — not at its outset as the timestamp suggested — and that he understood the unrecorded pre-interview as part of the same interrogation. (ROA.954.)

The recorded interview produced statements the PSR would later characterize as perjury in five respects. (PSR ¶ 20.) Each of the five can be explained by the conditions of the interview or the context of the trial testimony:

First, Mr. Nix testified at trial that recreation specialists always overlapped shifts and a supervisor was always present — that he was never alone with an inmate in the sense of being unsupervised on a shift. (ROA.930-31.) The PSR read this as a denial that he and Doe were ever alone, which the PSR then contrasted

with his admission that the July 4 encounter occurred. The trial testimony, in context, addressed staffing structure, not whether a momentary encounter in an office could occur.

Second, Mr. Nix testified he did not receive the voluntary-interview form until the end of the interview. (ROA.954.) The form's timestamp predated the recorded portion. But agents had conducted an unrecorded pre-interview before activating the recorder, a fact Agent Martinez confirmed at trial. (ROA.595.) Mr. Nix's testimony was consistent with his experience of the encounter as a single, continuous interrogation.

Third, Mr. Nix testified at trial that he never asked Doe to make copies of his real estate materials as a standalone request — he clarified he asked her to run additional copies only when she was already at the machine making class rosters. (ROA.959-60.) The PSR characterized this as a denial that he made the request at all. The trial testimony drew a factual distinction the PSR did not acknowledge.

Fourth, Mr. Nix testified on cross that Doe made comments on the recreation yard — including "I'm wet right now" — but denied he ever witnessed her physically expose herself. (ROA.965.) He explained that the agent's recorded question asked whether she had opened her legs, and his answer tracked that specific framing; what he confirmed was the verbal comments, not physical display. (ROA.965.)

Fifth, regarding ejaculation, Mr. Nix testified at trial that he did not ejaculate — that when the agent repeatedly asked where he ejaculated, he was responding to a leading framework the agent supplied, not describing his own conduct. (ROA.944-45, 968-69.) He denied taking out a paper towel or cleaning up anything. (ROA.969.)

### C. The district court erred in assessing an obstruction of justice enhancement.

Following the jury verdict, a PSR was prepared; it recommended an obstruction enhancement after concluding Mr. Nix "provided false testimony while under oath related to the offense of conviction." (PSR ¶¶ 32, 38.) Section 3C1.1 permits such an enhancement when "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." U.S.S.G. § 3C1.1.

In support, the PSR cited Section 3C1.1's commentary note four, which provides "a non-exhaustive list of examples of the types of conduct to which this adjustment applies," including "committing . . . perjury." U.S.S.G. § 3C1.1 cmt. 4. (PSR ¶ 22.) According to the PSR, Mr. Nix perjured himself when his sworn trial testimony contradicted the testimony he provided to case agents. (PSR ¶ 20.) The district court overruled Mr. Nix's written objection to the enhancement, (Def.'s PSR Resp.), adopting the PSR and Addendum's fact findings. (ROA.1147.)

Mr. Nix could not commit perjury simply by exercising his constitutional right to plead not guilty, nor by exercising his constitutional right to take the stand in his own defense. *See, e.g.*, *Brookhart v. Janis*, 384 U.S. 1, 7 (1966) (recognizing constitutional right to plead not guilty); *Rock v. Arkansas*, 483 U.S. 44, 50–53 (1987) (tracing the constitutional protections of the right to testify on one's own behalf). Indeed, the commentary to the Sentencing Guidelines says as much:

> This provision is not intended to punish a defendant for the exercise of a constitutional right. A defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury), refusal to admit guilt or provide information to a probation officer, or refusal to enter a plea of guilty is not a basis for application of this provision. In applying this provision in respect to alleged false testimony or statements by the defendant, the court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice.

U.S.S.G. § 3C1.1 cmt. 2.

In *United States v. Dunnigan*, 507 U.S. 87, 95 (1993), the Supreme Court agreed: "not every accused who testifies at trial and is convicted will incur an enhanced sentence under § 3C1.1 for committing perjury." Indeed, "an accused may give inaccurate testimony due to confusion, mistake, or faulty memory." *Id.* Or, "[i]n other instances, an accused may testify to matters such as lack of capacity, insanity, duress, or self-defense." *Id.*

The Court explained that proof of perjury under the enhancement requires a finding that a defendant gave "false testimony concerning a material matter with

the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Id.* at 94 (construing 18 U.S.C. § 1621).

But in Mr. Nix's case, the district court did no such thing.

### *1. The court failed to make the requisite finding of materiality.*

When "a defendant objects to a sentence enhancement resulting from h[is] trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition." *Dunnigan*, 507 U.S. at 95. In fact, "it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding." *Id.* But a district can make the requisite finding when "the court makes a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury." *Id.*

But here, the district court made no requisite obstruction or impediment findings. (ROA.1147.) The court only stated that it overruled the objection to obstruction of justice enhancement "for the reasons stated in the response and in the addendum." (ROA.1147.) It then "adopt[ed] the fact findings contained in these documents." (ROA.1147.)

The district court did not "address each element of the alleged perjury in a separate and clear finding." *Dunnigan*, 507 U.S. at 95. Nor did it "make[] a finding

of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury." *Id.*

Of course, in this circuit, the district court may make a specific finding of obstruction of justice by adopting the PSR, if the PSR makes such a finding. *E.g.*, *United States v. Mora-Carrillo*, 80 F.4th 712, 717 (5th Cir. 2023). Therefore, this Court must determine whether the PSR made a specific finding of materiality or willfulness. *See Dunnigan*, 507 U.S. at 94 (explaining perjury is "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory").

The PSR Addendum found willfulness, (Addendum at 2) but neither the PSR nor the Addendum addressed *materiality*. (PSR ¶ 32; Addendum at 2.) The Guidelines commentary defines materiality as "evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1 cmt. 6. But the PSR only says "the obstructive conduct related to the defendant's offense of conviction." (PSR ¶¶ 32, 38.) Being "*related*" to Mr. Nix's offense is hardly a finding that his testimony, if believed, would "influence or affect the issue." *Compare id.*, *with* U.S.S.G. § 3C1.1 cmt. 6.

Indeed, Black's Law Dictionary defines "related" as being "[c]onnected in some way; having relationship to or with something else." *Related*, Black's Law Dictionary (12th ed. 2024). For example, were Mr. Nix to have willfully testified

falsely that the date of one of the charged acts was his birthday — when in fact it was not — the statement would be *related* to his offense because it is connected in some way. But it would not support obstructive perjury because it was neither material nor would it have influenced whether Count 1 was proved. Therefore, the PSR's statement that Mr. Nix's purported false statement was "related to the defendant's offense of conviction" is insufficient. (PSR ¶¶ 32, 38.)

***2. The cited instances of false testimony do not rise to the level of perjury, because they are the result of confusion, mistake, or faulty memory.***

The PSR documents list several instances of purported perjury. Those statements are, instead, the "result of confusion, mistake, or faulty memory." *Dunnigan*, 507 U.S. at 94.

First, the PSR stated Mr. Nix "testified there was no time he would be alone with an inmate because a supervisor was on duty, when in fact the defendant and [Doe] were alone, as the defendant admitted, on July 4, 2021." (PSR ¶ 20.) This likely refers to Mr. Nix's statement at trial that there were always two recreation specialists on duty:

> Q. So were there any times that you or any other rec specialist would be alone with an inmate?
>
> A. No, not a time you would be alone with the inmate, because there a supervisor on duty. So Taylor is the supervisor, even though he not running classes, he still at the station.
>
> Meaning, like, he's out there, in front of everybody, or there's another rec specialist. Because as a rec specialist, I can't be

> outside and inside at the same time. I can't go to both spots at the same time. Like, you can't do it.

Q. So there would at least be two supposed to be scheduled?

A. Two supposed to be scheduled at all times.

Q. One inside, one outside?

A. One outside, one inside, plus Taylor.

(ROA.931.)

In context, Mr. Nix was saying, perhaps unartfully, that recreation supervisors always overlap shifts, so he never had a shift alone with an inmate. (ROA.930-31.) In any regard, Mr. Nix seemingly answered a different question than the one asked — talking about shifts and supervisors instead of whether he was ever alone with an inmate. (ROA.931.) So, to the extent Mr. Nix misspoke when responding, that misrepresentation was the "result of confusion [or] mistake." *See Dunnigan*, 507 U.S. at 94.

Second, the PSR alleged Mr. Nix testified that he signed the "Warnings" disclaimer form at the end of the interview, even though it was time-stamped for one minute after the interview started. (PSR ¶ 20; ROA.954, 957.) Specifically, Mr. Nix testified he did not receive the form "until the end" of the interview. (ROA.954.) The agents' testimony showed that they conducted an unrecorded pre-interview with Mr. Nix before having him sign the form. (ROA.595.) Agent Martinez said the OIG's "practice is to conduct a preliminary interview where we

introduce ourselves to the subject." (ROA.595.) The agents "make them aware what the OIG does. And [the agents] make them aware of the allegation that was made against them, that way it affords them the opportunity to decide whether they want to continue the interview with [the agents] or not." (ROA.595.) Mr. Nix reasonably interpreted the conversation before 10:55 a.m. as part of the formal interview. Here, again, his statement can be attributed to "confusion [or] mistake." *Dunnigan*, 507 U.S. at 94.

Third, the PSR said Mr. Nix perjured himself when he "testified he did not ask [Doe] to make copies of his real estate book." (PSR ¶ 20.) The trial testimony is more nuanced:

> Q. Okay. Now, Mr. Nix, you also said that, I guess in the interview, that Ms. Doe was making copies of some chapter of a real estate class; is that right?
>
> A. It wasn't that she was making copies of the real estate class. She was already making copies for the classes for the inmates. So when she making copies for the inmates, such as the fitness classes and other things, I would go in there to make my copies, but she making copies.
>
> I would say, make me a copy when you finished with this. It's not like I'm saying, Ms. Doe, make copies of my real estate classes. She'll be already making copies for the BOP fitness classes. I would go in there, when I can't make [my] copies, I say, hey, when you done, just run these copies for me. Not me calling her and saying, hey, Ms. Doe, would you make these copies for me?
>
> Q. So you're saying now that you didn't ask her to make copies?
>
> A. No, ma'am.

> Q. Because, of course, asking an inmate to make personal copies would be against the rules?
>
> A. Not personal copies, ma'am. Because it don't have my name on it. It's just copies from a book. So none of the stuff that Ms. Doe made, don't have my name on it.

(ROA.959-60.)

In context, Mr. Nix was drawing a distinction: he did not summon Doe to the copier — he asked her to run his copies only when she was already there. Mr. Nix plainly admits he asked Doe to make some additional copies when she was already using the machine. Therefore, the PSR characterization is inaccurate and, even were it not, at most Mr. Nix misunderstood what the Government was asking. *See Dunnigan*, 507 U.S. at 94.

Fourth, the PSR alleges Mr. Nix "denied [Doe] opened her legs and said she was 'wet,' which is inconsistent with the sworn testimony provided to agents." (PSR ¶ 20.) This is a mischaracterization of Mr. Nix's testimony:

> Q. Do all of the inmates open up their legs and show that they're wet?
>
> A. No. That's the thing that Ms. Doe was doing . . . . What I am saying was that, when I was on the rec yard, outside rec, most of inmates out there, they be sweating, they be jumping around. And Ms. Doe would say comments like, I'm wet right now. Not me can actually see that she wet.

(ROA.964.) Mr. Nix said several times that Doe would open her legs and say she was "wet." (ROA.964.) To the extent he ever implied otherwise, his testimony

seemingly indicates his response was the "result of confusion [or] mistake." *See Dunnigan*, 507 U.S. at 94.

Fifth and finally, the PSR alleges Mr. Nix said he "did not ejaculate or have to clean up any semen" and "never had contact with [Doe]." (PSR ¶ 20.) But it failed to provide examples from Mr. Nix's statement to agents that specifically contradicts these statements.

Even if the PSR had made a materiality finding — which it did not — none of the five statements rises to perjury. Each is the product of misunderstanding, confusion, or faulty memory.

### D. Counts One and Two are not separate harms and should not be grouped separately.

The PSR recognized that "[a]lthough Counts 1 and 2 involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting a common scheme or plan, the counts are not to be grouped because they constitute separate harms." (PSR ¶ 20 (citing U.S.S.G. § 3[D]1.2 cmt. n.4.)) But the trial court should have grouped them.

Section 3D1.2 provides, in part:

> All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule: . . .
>
> (b) When counts involve the same victim and two or more acts or transactions connected by a common criminal

> objective or constituting part of a common scheme or plan.

U.S.S.G. § 3D1.2. The Guidelines commentary, cited by the PSR, elaborates on the rule's meaning:

> 4. Subsection (b) provides that counts that are part of a single course of conduct with a single criminal objective and represent essentially one composite harm to the same victim are to be grouped together, even if they constitute legally distinct offense occurring at different times. This provision does not authorize the grouping of offenses that cannot be considered to represent essentially one composite harm (e.g., robbery of the same victim on different occasions involves multiple, separate instances of fear and risk of harm, not one composite harm). . . .
>
> Examples: (5) The defendant is convicted of two counts of rape for raping the same person on different days. The counts are not to be grouped together.

U.S.S.G. § 3D1.2 cmt. n.4.

Here, Mr. Nix's conduct "involve[s] substantially the same harm" because it "involve[s] the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." *See* U.S.S.G. § 3D1.2. Mr. Nix's two Section 2243(b) counts pertained to sexual abuse of the same ward. (PSR ¶¶ 8–12; ROA.49-51.) Each count was also "connected by a common criminal objective or constituting part of a common scheme or plan"—here, as part and parcel of Mr. Nix's relationship with Doe. U.S.S.G. § 3D1.2(b). (ROA.300, 340, 509.).

Responding to Mr. Nix's objection, the PSR said "[t]he point of the comment note is each incident of sexual assault against the same victim is considered a separate harm." (Addendum at 2.) True, the commentary lists as an example an instance where "the defendant is convicted of two counts of rape for raping the same person on different days." U.S.S.G. § 3D1.2 cmt. n.4. *But Mr. Nix was not convicted of two counts of sexually assaulting the same person on different days. Compare id.*, *with* (ROA.49-50 (superseding indictment)).

Although in Count Two Mr. Nix was convicted of his July 4, 2021, sexual contact with Doe, his conviction under Count One was not limited to another singular sexual contact. (ROA.49-50, 233.) Instead, Count One penalized *a range* of conduct as opposed to a singular incident. (ROA.49.) Specifically, it penalizes "a sexual act with Jane Doe" "between on or about May 1, 2021, and July 3, 2021." ROA.49. And, as discussed in *supra* Part III, Doe testified to several sex acts with Mr. Nix between May 1, and July 3, 2021 — for example, repeated sexual contact on Sundays in various places. (ROA.288-91.) Thus, the July 4 incident (Count Two), rather than being the second count of two convicted sex acts against Doe, was the last in a pattern of sexual assault that Mr. Nix was convicted of in Count One. Count Two, therefore, is a part of the "common scheme or plan" for which Mr. Nix was penalized in Count One. U.S.S.G. § 3D1.2(b).

The court should have grouped the two counts under U.S.S.G. § 3D1.2(b).

## CONCLUSION

For all these reasons, Mr. Nix requests that this Court vacate his conviction and remand for new trial and/or vacate his conviction on Count One and/or vacate his sentence and remand for resentencing.

/s/ *Jerry V. Beard*
**JERRY V. BEARD, Esq.**
*Counsel for Defendant-Appellant*

**CERTIFICATE OF SERVICE**

On May 21, 2026, I filed this brief through the Court's ECF system. Opposing Counsel has therefore been served. I will also send a paper copy to Appellant at the following address: Mr. Marerllis Nix, USM 82946-511, FCI Thomson, Federal Correctional Institution, P.O. Box 1002, Thomson, IL 61285.

/s/ *Jerry V. Beard*
**JERRY V. BEARD, Esq.**
*Counsel for Defendant-Appellant*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation announced in Federal Rule of Appellate Procedure 32(a)(7) for principal briefs because it contains 12,693 words, excluding the parts of the brief exempted under Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface and type style requirements because it has been prepared in Microsoft Word using the proportionally-spaced typeface Times New Roman, in a 14-point font size in the body of the brief, and a 12-point font size in the footnotes.

I understand that a material misrepresentation in completing this certificate, or circumvention of the length limitations in Federal Rule of Appellate Procedure 32(a)(7), may result in the Court striking the brief and imposing sanctions against the person signing the brief.

/s/ *Jerry V. Beard*
**JERRY V. BEARD, Esq.**
Counsel for Defendant-Appellant